**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00153-FDW-DCK**

| | |
|---|---|
| **SALEH SHAIBAN**<br>**FATIMA MUTHANA**<br>**AKRAM SHAIBAN**<br>**ASEEL SHAIBAN**<br>**TAHANI SHAIBAN**<br>**SAEED SHAIBAN**<br>**AMIN SHAIBAN,**<br><br>        **Plaintiffs,**<br><br>  **v.**<br><br>**ALEJANDRO MAYORKAS, Secretary**<br>**of the Department of Homeland**<br>**Security; TRACY RENAUD, Acting**<br>**Director of the United States Citizen**<br>**and Immigration Services and**<br>**Department of Homeland Security,[1]**<br><br>        **Defendants.** | **ORDER** |

THIS MATTER is before the Court on Defendants' Motion for Judgment on the Pleadings. (Doc. No. 86). The Motion has been fully briefed and is ripe for review. For the reasons stated herein, Defendant's Moton is GRANTED.

I.     **BACKGROUND**

Given the lengthy and complex history of this case, the Court finds it appropriate to set forth the procedural background in this matter as distinct from the factual background pertinent to the substance of Defendant's pending Motion. The procedural background is derived from the

---

[1] Alejandro Mayorkas and Tracy Renaud are automatically substituted for their predecessors. Fed. R. Civ. P. 25(d).

docket, and the factual background is derived primarily from the Certified Administrative Record, (Doc. No. 61), and briefing submitted by the parties.

### a. Procedural Background

On March 26, 2018, Plaintiffs filed a Petition for Writ of Mandamus, seeking a mandate directing Defendants to adjudicate and approve Plaintiffs' I-485 Applications to Register Permanent Residence.[2] (Doc. No. 1). Defendants timely filed a Motion to Dismiss, wherein they asked the Court to either dismiss or stay the action pending adjudication of Plaintiffs' I-485 Applications. (Doc. No. 7). This Court deferred ruling on the Motion to Dismiss and granted Defendants' Motion to Stay on August 1, 2018. (Doc. No. 13).

The matter remained dormant until early 2019, when the Court granted Plaintiffs leave to amend their Complaint. (Doc. No. 16). Plaintiffs filed their First Amended Complaint on April 5, 2018, which reflected the parties' update that Mr. Shaiban's wife and children were granted lawful permanent residence status and were no longer named as Plaintiffs in the action. (Doc. Nos. 15, 21). Defendants filed a Partial Motion to Dismiss, (Doc. No. 23), and Mr. Shaiban, the only remaining Plaintiff, filed a Second Motion to Amend. (Doc. No. 26). After roughly five months of various motions seeking extensions of time to reply by both parties, on January 22, 2020, the Court set a date for a hearing on Plaintiff's Second Motion to Amend and Defendants' Motion to Dismiss. (Doc. No. 42). After the hearing, the Court granted Plaintiff's Second Motion to Amend and denied as moot Defendants' Motion to Dismiss. (Doc. No. 45).

Three months later, after various jurisdictional motions and motions for extensions of time, Plaintiff filed a Second Amended Complaint on May 5, 2020, which again named Mr. Shaiban's

---

[2] The Petition for Writ of Mandamus named seven Plaintiffs: Saleh Shaiban, Fatima Muthana, Aseel Shaiban, Tahani Shaiban, Saeed Shaiban, Amin Shaiban, and Akram Shaiban. (Doc. No. 1). The named Defendants at the time were Kirstjen Nielsen and Lee Cissna. (Doc. No. 1).

wife, Fatima Muthana, as a Plaintiff along with Mr. Shaiban. (Doc. No. 53). Defendants timely filed a Motion to Dismiss, (Doc. No. 55), an Answer, (Doc. No. 60), and the Certified Administrative Record, (Doc. No. 61). On October 5, 2020, the Court granted in part and denied in part Defendants' Motion to Dismiss, terminating Ms. Muthana as a Plaintiff for lack of standing and dismissing all claims except for Mr. Shaiban's Administrative Procedure Act claim. (Doc. No. 68).

On February 12, 2021, Plaintiff filed a Motion to Complete or Supplement the Administrative Record, asking the Court to order supplementation of the Administrative Record and include "[a]ll transcripts or audio recordings of every hearing before EOIR [Executive Office of Immigration Review] between February 22, 2001 and January 6, 2007; all documents in Mr. Shaiban's EOIR file; and all documents in Mr. Shaiban's ICE file." (Doc. No. 76, p. 1). Defendant filed a Motion in Opposition, (Doc. No. 78), and on March 16, 2021, Magistrate Judge Keesler denied Plaintiff's Motion and ruled the Administrative Record was complete. (Doc. No. 81). After yet another extension of the briefing schedule, Defendant timely filed the pending Motion for Judgment on the Pleadings, (Doc. No. 86), which Plaintiff opposes. (Doc. No. 87). The basis of Plaintiff's Opposition Motion is founded in the discovery dispute Judge Keesler addressed in his March 16th Order and will be set forth in more detail below. Plaintiff did not file a Motion to Set Aside Final Agency Action and the time for doing so has long expired.[3] See (Doc. No. 83).

---

[3] Plaintiff's Motion to Set Aside Final Agency Action was due on March 31, 2021, *before* Defendant's Motion for Judgment on the Pleadings was due on April 14, 2021. (Doc. No. 83). Plaintiff did not move for any filing extensions. Additionally, Plaintiff has failed to comply with a number of this Court's requirements as set forth in the Amended Case Management Order. (Doc. No. 75). First, Plaintiff (and ostensibly, Defendant) failed to schedule a telephone conference before the referral Magistrate Judge within 14 days of becoming aware of the dispute regarding the Administrative Record. Id. at pp. 2-3. Second, to the extent Plaintiff's Opposition in Response to the instant motion is a motion made pursuant to Fed. R. Civ. P. 56(d), it does not comply with the requirements set forth in the Amended Case Management Order because it is not accompanied by the required memorandum of law. It is accompanied by a Declaration by Plaintiff's lawyer. Compare (Doc. Nos. 87, 87-1) with (Doc. No. 75, p. 4). To the extent Plaintiff's Opposition in Response is a discovery motion, as it is seeking the inclusion of additional evidence, it likewise does not comply with this Court's requirements set forth in the Amended Case Management Order

### b. Factual Background[4]

According to the undisputed record, Plaintiff Saleh Shaiban ("Plaintiff" or "Mr. Shaiban")

entered the United States in 1999, using a "false passport and B2 visa." (Doc. No. 61, p. 5). He

applied for asylum in December of 2000, and his application was denied on February 28, 2002. Id.

Mr. Shaiban appealed the denial of his asylum application to the Board of Immigration Appeals

("BIA"), and the BIA remanded the case for rehearing in front of a different Immigration Judge.

Id. A hearing was conducted, and the new Immigration Judge granted Mr. Shaiban's application

for asylum on December 4, 2006. Id. at pp. 5-6.

On November 26, 2008, Mr. Shaiban filed an I-485 Application to Register Permanent

Residence or Adjust Status based on his previous grant of asylum. Id. at p. 6. On July 23, 2018,

United States Citizenship and Immigration Services ("USCIS") issued a "Notice of Intent to Deny"

("NOID"), informing Mr. Shaiban of USCIS' intention to deny his I-485 application based on his

participation in the Yemeni Socialist Party ("YSP"), which was an "undesignated terrorist

organization during the time [Mr. Shaiban was] associated with them." (Doc. No. 61, p. 26). Mr.

Shaiban responded to the NOID, arguing in large part that USCIS was collaterally estopped from

considering Mr. Shaiban's affiliation with the YSP because the 2006 grant of asylum "proves, ipso

facto . . . that [the Immigration Judge] made the determination that Mr. Shaiban was not associated

with terrorism." (Doc. No. 61, p. 32).

USCIS made the final decision to deny Mr. Shaiban's I-485 application on February 12,

2019. (Doc. No. 3). In making its final decision, USCIS considered the following evidence

---

because it is more than 3,000 words. Compare (Doc. Nos. 87, 87-1) with (Doc. No. 75, p. 4). The Court also notes
that Plaintiff submitted a reply memorandum, (Doc. No. 79), with respect to his Motion to Supplement, (Doc. No.
76), and reply memoranda are not permitted in discovery or evidentiary disputes. (Doc. No. 75, p. 4).
[4] The factual background set forth herein reflects the factual issues as they pertain to Mr. Shaiban because he is the
only remaining Plaintiff.

submitted by Plaintiff in rebuttal: (1) a brief from [Plaintiff's] attorney; (2) evidence list in support

of NOID response; (3) a copy of the order by the Immigration Judge who granted asylum, dated

December 4, 2006; (4) a copy of a report dated October 25, 2006 and signed by Jefferson Gray,

Visiting Researcher, Middle East program, University of Virginia, Charlottesville, Virginia; (5) a

copy of <u>Tom Amrollah v. Janet Napolitano, Sec'y, Dep't of Homeland Sec.</u>, 710 F.3d 568 (5th

Cir. 2013); (6) a copy of <u>Astoria Fed. Sav. and Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991); and

(7) a copy of *Immigration Law Advisor, Tier III Terrorist Organizations: The Role of the*

*Immigration Court in Making a Terrorist Determination*, by Denise Bell (July 2016). (Doc. No.

61, p. 10). Notably absent from Plaintiff's rebuttal and submission of evidence was a copy of the

transcript from the hearing conducted before the Immigration Judge who granted Plaintiff's

asylum application in 2006. <u>See</u> (Doc. No. 61, p. 10).

In its written final decision, USCIS specifically addressed Mr. Shaiban's collateral estoppel

argument and explained

> [a]pplicant's attorney indicated that the immigration judge ruled that the applicant
> was not a member of a terrorist organization. However, a review of the transcripts
> indicated that the immigration judge did not at any time indicate that the applicant
> was not a member of a terrorist group, nor was it argued by INS. [5]

(Doc. No. 61, p. 10). And herein lies the heart of the discovery dispute Plaintiff continues to assert

in his Response to Defendant's pending Motion—it cannot be determined whether USCIS's final

decision was supported by law without knowing why the Immigration Judge made the decision to

approve asylum in 2006. <u>See</u> (Doc. No. 87). The Court will address this argument and the

arguments set forth in Defendants' Motion for Judgement on the Pleadings in turn below.

---

[5] The Court presumes that USCIS was referring to the transcripts that *were* included in the record reviewed by
USCIS, which were the transcripts of the asylum hearings in 2002. (Doc. No. 61-1, pp. 146-212).

## II.    LEGAL STANDARD

The pending motion before the Court presents the issue of whether the Court should affirm or overturn a decision by USCIS denying Plaintiff an adjustment to lawful permanent residence status. This Court's judicial review of the agency's decision is available under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and governed by statutory and regulatory standards. <u>See</u> 8 U.S.C. § 1182(a)(3); 8 C.F.R. § 209.2. Generally speaking, an alien who has been granted asylum

> may be adjusted to that of an alien lawfully admitted for permanent residence, provided the alien:
>
> (i)      Applies for such adjustment;
> (ii)     Has been physically present in the United States for at least one year after having been granted asylum;
> (iii)    Continues to be a refugee within the meaning of section 101(a)(42) of the Act, or is the spouse or child of a refugee;
> (iv)    Has not been firmly resettled in any foreign country; and
> (v)     Is admissible to the United States as an immigrant under the Act at the time of examination for adjustment . . . and
> (vi)    Has a refugee number available under section 207(A) of the act.

8 C.F.R. § 209.2(a).

> An applicant who is not admissible to the United States as described in 8 C.F.R. § 209.2(a)(1)(v), may, under Section 209(c) of the Act, have the grounds of inadmissibility waived by USCIS *except for those grounds under sections* 212(a)(2)(C) and 212(a)(3)(A), (B), (C) or (E) of the Act for humanitarian purposes, to ensure family unity, or when it is otherwise in the public interest.

8 C.F.R.§ 209.2(b) (emphasis added). "Security and related grounds" are grounds for which USCIS may not waive admissibility. <u>See</u> 8 C.F.R.§ 209.2(b); 8 U.S.C.§ 1182(a)(3).

Relevant to the instant case, an alien is inadmissible because of security and related grounds when the alien "is a member of a terrorist organization . . . [or] has received military-type training . . . from or on behalf of any organization that, at the time the training was received, was

a terrorist organization (as defined in clause vi)). 8 U.S.C. § 1182 (a)(3)(B)(i)(V), (VIII). A

"terrorist organization" is defined as an organization:

> (I) designated under section 1189 of this title;
> (II) otherwise designated, upon publication in the Federal Register . . ., as a terrorist organization after finding that the organization engages in [terrorist activities];
> (III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, [terrorist activities].

§ 1182(a)(3)(B)(vi). In turn, to "engage in terrorist activity" means to

> in an individual capacity or as a member of an organization—
>> (I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;
>> (II) to prepare or plan a terrorist activity;
>> (III) to gather information on potential targets for terrorist activity;
>> (IV) to solicit funds or other things of value for-
>>> (aa) a terrorist activity;
>>> (bb) a terrorist organization . . .
>> . . .
>> (VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training-
>>> (aa) for the commission of a terrorist activity;
>>> (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;
>>> (cc) to a terrorist organization . . . or to any member of such an organization; or
>>> (dd) to a terrorist organization . . . to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

§ 1182(a)(3)(B)(iv). "Terrorist activities" are defined as an activity that involves any of the

following:

> (I) The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle)
> (II) The seizing or detaining, and threatening to kill, injure, or continue to detain another individual in order to compel a third person . . . to do or abstain from doing

any act as an explicit or implicit condition for the release of the individual seized or detained.
(III) A violent attack upon an internationally protected person . . . or upon the liberty of such a person.
(IV) An assassination.
(V) The use of any—
        (a) biological agent, chemical agent, or nuclear weapon or device, or
        (b) explosive, firearm, or other weapon or dangerous device (other than for mere
        personal monetary gain),

with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

§ 1182(a)(3)(B)(3)(B)(iii).

In ruling on Defendant's Motion for Judgment on the Pleadings, this Court must analyze USCIS's decision employing the limited scope of review permitted under the APA. 5 U.S.C. § 706. Under the APA, a court is bound to consideration of the administrative record on which the agency based its decision, as well as applicable law, when determining whether to hold unlawful or set aside an agency's actions, findings, or conclusions. Id.; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). "[I]n an APA agency review case, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA.'" Hyatt v. U.S. P.T.O 146 F. Supp. 3d 771, 780 (E.D. Va. 2015) (quoting Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). In short, to rule on Defendant's Motion, the Court must determine whether USCIS's decision is supported by the record and applicable law.

## III.   ANALYSIS

Defendant argues this Court should affirm USCIS's decision denying Plaintiff's I-485 Application because the decision is supported by substantial evidence and is in accordance with

law. (Doc. No. 86). Plaintiff offers no argument in direct response, but rather, continues to argue the Administrative Record is not complete. (Doc. No. 87-1). As such, the Court will address Plaintiff's argument related to the Administrative Record first and Defendant's Motion for Judgment second.

### a. Administrative Record

In his response to Defendant's Motion for Judgment, Plaintiff submits a declaration by his attorney, Julie Goldberg ("Ms. Goldberg"), which argues Defendant's Motion should be denied because the Administrative Record is not complete. (Doc. No. 87-1). However, the Administrative record *is* complete, see (Doc. No. 81), and Plaintiff has not now, or at any time in this litigation, met his "special burden of demonstrating that that the [C]ourt should reach beyond the record" and consider extra-record evidence. Sanitary Bd. of City of Charleston, W.V. v. Wheeler, 918 F.3d 324, 334 (4th Cir. 2019) ("[C]ourts will ordinarily assume that the administrative record is complete and exclusive for purposes of judicial review.").

First, to the extent Plaintiff argues the record was incomplete when USCIS reviewed it, either due to bad faith or mistake, Plaintiff's argument is misplaced. Plaintiff bears the sole burden of proving that he is entitled to receive the immigration status for which he applies. 8 U.S.C. § 1361. It was accordingly Plaintiff's responsibility to provide USCIS with any and all evidence Plaintiff believed would be helpful to USCIS in adjudicating his I-485 Application. Plaintiff recognized his responsibility when he submitted an "Evidence List in Support of NOID Response" along with his NOID Response. (Doc. No. 61, p. 34). However, notably absent from the exhibits actually submitted to USCIS was the transcript or recording from the asylum hearing in 2006. See id.; see also (Doc. No. 61, p. 10) (USCIS written decision indicating the transcript was not including in Plaintiff's file despite being listed as an included exhibit).

In her Declaration, Ms. Goldberg admits it is "technically true" that no transcript of the 2006 hearing was generated because no appeal was filed. (Doc. No. 87-1, p. 3); see also DEP'T OF JUST., IMMIGR. CT. PRAC. MANUAL, Ch. 4.10(b) (Nov. 16, 2020), https://www.justice.gov/eoir/page/file/1084851/download. Because no appeal was filed, there was no transcript generated, and the Immigration Judge's oral decision did not become the official opinion in the case. See (Doc. No. 61, pp. 206-07) ("This is a summary of the oral decision entered on Dec. 4, 2006. This memorandum is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official decision in the case."). It was accordingly Plaintiff's responsibility to obtain the transcripts using the one of the procedural mechanisms described in Ms. Goldberg's declaration. See (Doc. No. 87-1, pp. 3-4). Simply put, there were no transcripts of the 2006 hearing in the record before USCIS when it adjudicated Plaintiff's I-485 application because *Plaintiff failed to provide the transcripts*.[6]

Second, to the extent Plaintiff assumes the record was and is complete but nonetheless asks this Court to "reach beyond the record . . . to introduce extra-record evidence that the agency actually relied on that was omitted from the administrative record," see Sanitary Bd., 918 F.3d at 334, the Court is unpersuaded. In both his initial Motion to Supplement, (Doc. No. 76), and in Ms. Goldberg's Declaration, (Doc. No. 87-1), Plaintiff appears to assume USCIS relied on transcripts from the 2006 hearing without providing any evidence in support of such assumption.[7] In making

---

[6] If Plaintiff argues the record was incomplete due to bad faith, he has not made the requisite "strong showing of bad faith" to justify extra-record discovery. See Dep't of Com., 139 S. Ct. 2551, 2573-74 (explaining that extra-record discovery in an APA case may be appropriate when a "strong showing of bad faith or improper behavior" is made).

[7] The only evidence Plaintiff points to are documents contained in the Administrative Record that were generated by the Executive Office of Immigration Review ("EOIR") in reference to the 2002 asylum hearing, denial, and subsequent appeal. See (Doc. No. 61-1, pp. 30-60). All this indicates is that, when making its decision on Plaintiff's I-485 application, USCIS was aware of Plaintiff's lengthy attempt to obtain status as an asylee between 2002 and 2006. USCIS's *awareness* of the 2006 asylum hearing and decision does not shift the evidentiary burden from Plaintiff to USCIS. It remained Plaintiff's burden to provide USCIS with evidence in support of his I-485 application.

this assumption and argument, Plaintiff appears to "seek to augment the record with more support in favor of [his] original petition to the agency." <u>Ergon-W.V. Inc. v. U.S. E.P.A.</u>, 980 F.3d 403, 420 (4th Cir. 2020). Indeed, Ms. Goldberg's Declaration states that the extra-record evidence must be produced because "this Court cannot possibly determine if collateral estoppel applies as a matter of law." (Doc. No. 87-1, p. 5). Plaintiff made the same collateral estoppel argument in his NOID Response but, as is the case here, Plaintiff failed to provide the appropriate supporting documents that would have allowed USCIS, or this Court here, to evaluate the collateral estoppel argument.[8] (Doc. No. 61, pp. 31-33).

To be sure, Ms. Goldberg's Declaration repeatedly states Plaintiff has attempted to obtain transcripts or recordings from the 2006 asylum hearing but has been unsuccessful in doing so. <u>See</u> (Doc. No. 87-1, pp. 1-5). However, Plaintiff has provided *no* evidence, beyond Ms. Goldberg's Declaration indicating that he availed himself of the procedural mechanisms by which he could obtain the recordings or transcripts and submit them to USCIS. For example, as Ms. Goldberg states in her Declaration, the Executive Office for Immigration Review ("EOIR") allows for parties to an immigration hearing to request recordings of the hearing via a Freedom of Information Act ("FOIA") request or by request made directly to the Immigration Court. (Doc. No. 87-1, pp. 3-4); <u>see also</u> EXEC. OFF. FOR IMMIGR. REV., EOIR POLICY MANUAL, Part II Ch. 12.2 (2021). However, Plaintiff has not submitted any evidence indicating he actually made a FOIA request or otherwise contacted the Immigration Court to obtain a recording of the 2006 hearing.[9]

---

[8] It is not lost on the Court that this is the crux of Plaintiff's argument. However, even if the Court *did* order the production of the 2006 asylum hearing transcripts now, it would not change the fact that the transcripts were not in the record reviewed by USCSIS in 2018. This Court's jurisdiction is limited to review of USCIS's decision in light of the record USCIS *actually* relied on when it made its decision two years ago.

[9] Ms. Goldberg states that "the government has not responded to [Plaintiff's] FOIA request." (Doc. No. 87-1, p. 3). To the extent Plaintiff seeks an appeal of an improperly denied FOIA request or nonresponse to such request, that issue is not properly before this Court.

Ultimately, it was Plaintiff's sole responsibility to provide USCIS with evidence in support of his I-485 Application in 2018, and it is now Plaintiff's "special burden" to demonstrate to the Court that considering extra-record evidence is appropriate. Plaintiff failed to meet his burden in 2018, and he likewise fails to meet his burden here. Accordingly, to the extent Plaintiff's Response and Ms. Goldberg's Declaration serves as a renewed motion to supplement, Plaintiff's motion is denied.

### b. USCIS Decision

Turning now to Defendants' Motion for Judgment on the Record, (Doc. No. 86), Defendant argues its decision to deny Plaintiff's I-485 Application is supported by evidence and applicable law under the standards set forth in 5 U.S.C. § 706(2)(A). (Doc. No. 86). Plaintiff offers no argument in response, but his Amended Complaint alleges "Defendants' determination that [Plaintiff] is not eligible for adjustment of status is 'arbitrary, capricious and an abuse of discretion or otherwise not in accordance with the law.'" (Doc. No. 53, p. 12). The Court will accordingly evaluate the denial of Plaintiff's I-485 Application under the arbitrary and capricious standard.

The Administrative Procedure Act provides that "'agency action, findings and conclusions'" may be set aside by a reviewing court when they are "'found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Ohio Valley Envt. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing 5 U.S.C. § 706(2)). An agency action, finding, or conclusion is arbitrary and capricious only if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or a product of the agency expertise. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)

A court's inquiry under the arbitrary and capricious standard is "searching and careful, but ultimately narrow and highly deferential." Webster v. U.S. Dep't of Agric., 685 F.3d 411, 422 (4th Cir. 2012) (citation omitted). There is a "presumption in favor of finding the agency action valid." Ohio Valley Envt. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing Nat. Res. Def. Council, Inc. v. EPA, 16 F.3d 1395, 1400 (4th Cir. 1993)). "In the end, if the agency has followed the proper procedures, and if there is a rational basis for its decision, [a court] will not disturb its judgment." Webster, 685 F.3d at 422 (citation omitted). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." Ohio Valley Envt. Coal, 556 F.3d 192 (quotation and citation omitted).

However, such deference does not reduce this Court's review to a "rubber stamp" of agency action:

> While the standard of review is narrow, the court must nonetheless engage in a searching and careful inquiry of the record . . . to educate the court so that it can understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made.

Id. at 192-93 (internal citations omitted).

Here, Defendant argues the denial of Plaintiff's I-485 application was not arbitrary and capricious because USCIS properly determined Plaintiff was inadmissible due to his participation in a Tier III terrorist organization. (Doc. No. 86, p. 9). After a careful review of USCIS' written decision, the Administrative Record, and applicable law, the Court agrees with Defendant and finds that USCIS' decision is not arbitrary and capricious and is supported by applicable law.

In its written decision, USCIS made two conclusory findings compelling its decision to deny Plaintiff's I-485 Application: first, that Plaintiff was an active member of the Yemeni

Socialist Party ("YSP") between 1981 until July 1994; and second, that the Yemeni Socialist Party was a Tier III terrorist organization during the Yemeni Civil War in 1994. (Doc. No. 61, pp. 9-11). Both of these findings are supported by the record and applicable law.

First, USCIS determined Plaintiff was a member of the YSP based on his 2006 Application for Asylum and accompanying affidavit. (Doc. No. 61, p. 6). In Plaintiff's 2006 affidavit, he stated he became a policeman in Yemen upon joining the Yemeni Socialist Party. (Doc. No. 61-2, p. 12). Plaintiff also stated he "returned to work as a policeman" in Arden City in 1994 when the Yemeni Civil War broke out. (Doc. No. 61-2, p. 14). Furthermore, during Plaintiff's 2002 asylum hearing, Plaintiff admitted he fought as a soldier on the battlefield during the Yemeni Civil War in 1994. (Doc. No. 61-1, pp. 173-75). The Administrative Record clearly demonstrates Plaintiff, by his own admission, was a member of the YSP during 1994. USCIS's conclusion finding the same is accordingly rational and supported by the record evidence.

Second, USCIS determined the YSP was an undesignated Tier III terrorist organization during the Yemeni Civil War in 1994 when Plaintiff served as a "soldier on the battlefield." (Doc. No. 61, p. 9). Specifically, the USCIS decision stated, "there is evidence to indicate that the YSP engaged in terrorist activity when it engaged in combat activities against military and civilian targets from February to July 1994." Id. As evidence in support of its decision finding the YSP a terrorist organization between February 20, 1994 and July 8, 1994, USCIS cited to a number of news articles, Human Rights Watch reports, and a U.S. Department of State report that detailed some of the violence that occurred during the Yemeni Civil War. Id. at pp. 12-13. According to USCIS, the YSP was documented as having "targeted civilians," and on at least one occasion "a SCUD missile [fired by YSP separatists] killed 25 people when it hit a marketplace." Id. at p. 8; see also, *Yemen: Human Rights in Yemen During and After the 1994 War*, Hum. Rts. Watch/

MIDDLE EAST, Oct. 1994, at 9-12 ("Scuds are considered indiscriminate weapons because of their inherent inaccuracy. Their use, even against military targets, in any area of civilian concentration is therefore a violation of the rules of war.").

After reviewing the USCIS decision, relevant statutory authority, the record, and other supporting documents, the Court finds there is a rational basis for USCIS's finding that YSP was a terrorist organization during the Yemeni Civil War. As stated in the Immigration and Nationality Act, a terrorist organization is defined as an organization that participates in terrorist activities. 8 U.S.C. § 1182(a)(3)(B)(vi). A terrorist activity is an activity during which an individual uses an "explosive, firearm, or other weapon or dangerous device . . . with the intent to endanger . . . the safety of one or more individuals. § 1182(a)(3)(B)(iii)(V)(b). It was thus entirely rational for USCIS to have determined the YSP was a terrorist organization during the Yemeni Civil War due to the YSP's targeting of civilians and SCUD missile use directed at local marketplaces, which inherently endangered the safety of civilians.

Based on USCIS's finding that the YSP was a terrorist organization during the Yemeni Civil War, USCIS subsequently determined Plaintiff had "engaged in terrorist activity" as defined in § 1182(a)(3)(B)(iv) based on Plaintiff's own statement that he fought "as a soldier" in the Yemeni Civil War on behalf of the YSP. (Doc. No. 61, pp. 10-11). Fighting as a soldier can be rationally interpreted as "afford[ing] material support to a terrorist organization" as outlined in § 1182(a)(3)(B)(iv)(VI), which would make Plaintiff inadmissible for security and related grounds. As an inadmissible alien for security and related grounds, Plaintiff is accordingly ineligible for an adjustment of status as outlined in 8 C.F.R. § 209.2(a)-(b).

The Court finds USCIS's denial of Plaintiff's I-485 Application was not arbitrary and capricious. USCIS built a logical and rational bridge, connecting the facts contained in the

Administrative Record with applicable law and supporting authority. The denial of Plaintiff's I-485 Application cannot be said to be the result of an arbitrary and capricious decision-making process. To the extent a collateral estoppel argument is asserted, it is unpersuasive because the Administrative Record, including the transcripts from the 2002 asylum hearing, does not contain any indication that the issue of whether Plaintiff engaged in terrorist activities via his membership in the YSP was "actually litigated," which is an essential requirement of collateral estoppel.[10] See Ramsey v. U.S.I.N.S., 14 F.3d 206, 210 (4th Cir. 1994) (listing "the issue must have been actually determined" as an essential element of collateral estoppel). Accordingly, the Court finds Defendants are entitled to Judgment on the Record.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment on the Record, (Doc. No. 86), is GRANTED. To the extent Plaintiff asserts a motion in his Response, see (Doc. No. 87-1), Plaintiff's motion is DENIED. The Clerk of Court is respectfully DIRECTED to enter a separate judgment in accordance with the terms of this Order.

IT IS SO ORDERED.

Signed: July 7, 2021

Frank D. Whitney
United States District Judge

---

[10] The Court acknowledges Plaintiff's contention the collateral estoppel issue is relevant with respect to the 2006 asylum hearing, not the 2002 asylum hearing. However, as discussed extensively herein, the substance of the 2006 hearing was not in the Administrative Record due to Plaintiff's failure to provide a transcript or recording of the hearing.